UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re DITECH HOLDING CORPORATION, et al.,<br><br>                                    Debtors.<br><br>KEVIN G. SNYDER and THE ESTATE OF MARY S. SNYDER,<br><br>                                    Appellants,<br><br>                 -against-<br><br>CONSUMER CLAIMS TRUSTEE, et al.,<br><br>                                    Appellees. | 23-CV-10254 (JGLC)<br><br>**OPINION AND ORDER** |

JESSICA G. L. CLARKE, United States District Judge:

This appeal comes before the Court from the Bankruptcy Court for the Southern District of New York. Appellants, whose claim in Debtors' bankruptcy proceedings was disallowed in the order on appeal, make the following four requests that the Court:

    (1) reverse the Bankruptcy Court's decision to apply collateral estoppel to an issue decided by the South Carolina state courts;

    (2) permit Appellants' claim in Debtors' bankruptcy to proceed under five causes of action—civil compensatory contempt, breach of contract, violation of the South Carolina Unfair Trade Practices Act, violation of the Fair Debt Collection Practices Act, and violation of the Real Estate Settlement Procedures Act;

    (3) reverse the Bankruptcy Court's decision to deny Appellants leave to amend their claim to assert administrative expense priority; and

    (4) set the claim's reserve amount at $400,000.

For the reasons stated herein, the Court DENIES each of these requests and affirms the Bankruptcy Court's order. The Court finds that collateral estoppel is an applicable defense to Appellants' claims, Appellants' five causes of action each fail to meet the requisite pleading

standard, the Bankruptcy Court appropriately denied leave to amend the claim, and no reserve amount will be set because the claim is disallowed in full.

## BACKGROUND

This case's extensive history dates back to 2010, when one of the Debtors' legal predecessors initiated a foreclosure action in South Carolina state court against the Appellants. Rather than recount each relevant detail of that history, the Court adopts and presumes the parties' familiarity with the undisputed facts as described in the Background section of the Bankruptcy Court's Order. *See* ECF No. 1-1 ("Order") at 3–15. The Court summarizes these facts below:

Appellant Kevin Snyder and the deceased Mary Snyder, now represented through Kevin Snyder as administrator of her estate, (together, the "Snyders" or "Snyder") are listed as borrowers on a mortgage on real property located in South Carolina. This mortgage secured a promissory note executed by Kevin Snyder. BAC Home Loans Servicing, LP ("BAC"), a legal predecessor to the Debtor Ditech Holding Corporation ("Ditech"), serviced the mortgage loan.

On September 23, 2010, BAC initiated a foreclosure action against the Snyders in the Court of Common Pleas for Charleston County, South Carolina (the "State Court" and the "State Action"), for failure to make monthly payments since September 2008. After being denied foreclosure intervention and retaining counsel, the Snyders responded to the State Action with a number of defenses and counterclaims. These claims included: violation of the South Carolina Supreme Court Administrate Order 2011-05-02-01 (the "Administrative Order") for failure to make a good faith effort to evaluate the Snyders for foreclosure intervention (the "Civil Compensatory Contempt Claim"); setoff/recoupment claims for violation of the South Carolina Attorney Preference Statute (the "Attorney Preference Statute") as to Mary Snyder; violations of

the Real Estate Settlement Procedures Act ("RESPA"); breach of contract and breach of the implied covenant of good faith and fair dealing; and unfair trade practices under the South Carolina Unfair Trade Practices Act ("SCUPTA"). Altogether, these claims included both monetary and non-monetary requests for relief.

The State Action was stayed pending foreclosure intervention, though discovery continued. In the meantime, several corporations succeeded BAC. Ditech is the current successor and servicer of the mortgage loan.

On February 11, 2019, Ditech filed for chapter 11 bankruptcy in the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). Shortly after, Ditech filed a Notice of Bankruptcy Filing and Imposition of Automatic Stay in the State Action. Notwithstanding the stay, the parties cross moved for summary judgment on the non-monetary portions of their respective claims and counterclaims. The Master-in-Equity[1] ruled in Ditech's favor, ordered the foreclosure of the mortgage, and made several pertinent findings—including that Ditech and its predecessors had acted in good faith and complied with the Administrative Order. ECF No. 7, 4784-7 ("Summary Judgement Order") ¶¶ 9–10.

On January 2, 2020, Snyder and Ditech executed a Stipulation of Dismissal (the "Stipulation") in the State Action. This stipulation purported to dismiss, with prejudice, Snyder's remaining claims for monetary recovery, but preserved Snyder's monetary claims in the Bankruptcy Court with the following language:

> This stipulation is made without prejudice to, and specifically preserving, [Snyder's] claim in the pending bankruptcy . . . and [Snyder's] appeal of non-monetary claims that are pending before the South Carolina Court of Appeals[].

ECF No. 7, 4784-9 ("Stipulation") at 2.

---

[1] Masters-in-Equity are a part of South Carolina's unified judicial system, and, upon referral, have the power and authority of a South Carolina Circuit Court sitting without a jury. *See* S.C. CODE ANN. § 14-11-10, *et seq.* (2024).

On July 29, 2022, the South Carolina Court of Appeals affirmed the Master-in-Equity's findings in the State Action. The South Carolina State Supreme Court subsequently denied Snyder's petition for writ of certiorari and ended the case, leaving Snyder with only his claims in the bankruptcy proceedings.

In these proceedings, Snyder asserts an unliquidated unsecured claim against Ditech in the sum of $300,000 (the "Claim"). Under Ditech's bankruptcy plan, the Consumer Claims Trustee, Appellee, is responsible for the distribution of the Consumer Creditor Net Proceeds to holders of Allowed Consumer Credit Claims and has exclusive authority to object to Consumer Creditor Claims. The Consumer Claims Trustee objected to the Claim on September 18, 2020, on the grounds that the findings in the State Action preclude relief in the bankruptcy proceedings.

On March 23, 2023, the Consumer Claims Trustee filed a motion to estimate certain claims, including Snyder's Claim, for purposes of setting a reserve. In their response to that motion, Snyder argued that his Claim should be accorded administrative expense priority and that the reserve should be at least $400,000.

On November 7, 2023, the Bankruptcy Court entered the Order now on appeal, sustaining the Consumer Claims Trustee's objections to Snyder's Claim, disallowing the full Claim, and denying Snyder leave to amend the Claim as an administrative expense claim. Snyder now appeals to this Court and raises the following issues:

(1) Did the Bankruptcy Court err in applying the doctrine of collateral estoppel to bar certain causes of action given the existence of the Stipulation?

(2) Did the Claim meet the Rule 12(b)(6) pleading standard for compensatory contempt, breach of contract, violation of South Carolina's Unfair Trade Practices Act, violation of the Fair Debt Collection Practices Act, and violation of the Real Estate Settlement Procedures Act?

(3) Did the Bankruptcy Court err in denying Snyder leave to amend the Claim to assert administrative expense priority?

(4) If the Claim is not disallowed, what is the appropriate reserve amount?

**LEGAL STANDARD**

District courts have appellate jurisdiction over final judgments of bankruptcy courts. 28 U.S.C. § 158(a). Findings of fact are reviewed for clear error, while conclusions of law are reviewed *de novo*. *In re Colony Hill Assocs.*, 111 F.3d 269, 273 (2d Cir. 1997). Mixed questions of law and fact are reviewed *de novo. In re Vebeliunas*, 332 F.3d 85, 90 (2d Cir. 2003). Rulings on whether to permit amendments to claims are reviewed for an abuse of discretion, *In re Integrated Res., Inc.*, 157 B.R. 66, 70 (S.D.N.Y. 1993), which occurs only when a court "applies legal standards incorrectly or relies upon clearly erroneous findings of fact, or proceeds on the basis of an erroneous view of the applicable law." *In re Harris*, 464 F.3d 263, 268 (2d Cir. 2006).

**DISCUSSION**

This section proceeds in four parts. First, the Court examines whether collateral estoppel bars relitigating the issue of whether Ditech and its predecessors violated the Administrative Order and finds that it does. Second, the Court determines Snyder fails to state any viable cause of action. Third, this Court finds that the Bankruptcy Court did not abuse its discretion in denying Snyder leave to amend his claim and affirms that decision. Finally, because the Court finds Snyder's claim is disallowed, there will be no reserve amount.

**I.      The Bankruptcy Court Correctly Applied Collateral Estoppel to the Issue of Whether Defendants Violated the Administrative Order**

Snyder asks the Court to find that Ditech and its predecessors violated the Administrative Order, which requires parties in foreclosure actions to act in good faith. Snyder claims that Ditech violated the Administrative Order by prolonging the foreclosure and generating unnecessary costs. ECF No. 8 ("Appellants' Br.") at 1. Because the South Carolina courts already

5

determined that Ditech and its predecessors did not violate the Administrative Order, Snyder is barred from relitigating this issue under the doctrine of collateral estoppel.

Collateral estoppel, also known as issue preclusion, prohibits the relitigation of an issue that has already been determined by a valid and final judgment. *Schiro v. Farley*, 510 U.S. 222, 232 (1994) (citing *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)). To determine the preclusive effect of a state court judgment, federal courts must apply the preclusion law of the rendering state. *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d. Cir. 2000).

Here, the relevant judgment comes from South Carolina. South Carolina law requires the party asserting collateral estoppel to demonstrate that the issue was "(1) actually litigated in the prior action; (2) directly determined in the prior action; and (3) necessary to support the prior judgment." *Carolina Renewal, Inc. v. South Carolina Dept. of Transp.,* 684 S.E. 2d 779, 782 (S.C. Ct. App. 2009); *see also Zurcher v. Bilton*, 666 S.E.2d 224, 226 (S.C. 2008). Collateral estoppel may be asserted as an affirmative defense by a defendant who was not a party to the previous litigation if the plaintiff "had a full and fair opportunity to previously litigate the issues." *Carolina Renewal*, 684 S.E. 2d at 782. But even if all the elements for collateral estoppel are met, courts may refuse to apply the doctrine when "unfairness or injustice results or public policy requires it." *Id.* (citing *State v. Bacote*, 503 S.E.2d 161, 162 (1998).

The issue of whether Ditech violated the Administrative Order meets each element of collateral estoppel. When litigating their claim for Civil Compensatory Contempt in the State Action, the Snyders had an opportunity to present on summary judgment evidence supporting their allegations that Ditech and its predecessors repeatedly violated the Administrative Order. *See* ECF No. 7, 4784-6; 4784-7; 4784-11. The Master-in-Equity considered the Snyders' submission and expressly found that "[Ditech] has acted in good faith and has complied with the

6

provisions of the Administrative Order . . . . To the extent that Defendants have pled a cause of action for Civil Compensatory Contempt, there is no disputed issue of material fact with respect to Plaintiff's compliance with the terms of the Administrative Order . . . ." Summary Judgment Order ¶¶ 9–10. The Snyders then continued to litigate the issue on appeal. The Court of Appeals again determined that "Snyder supplied no evidence to show Ditech or its predecessors failed to comply with the Administrative Order" and that "the delay in the foreclosure proceeding . . . was at least in part a result of Snyder's own conduct." ECF No. 7, 4784-11 ("Court of Appeals Order") at 10. Both times, the determination that Ditech and its predecessors complied with the Administrative Order was necessary for the finding in favor of Ditech. *See* Summary Judgment Order ¶¶ 9–10; Court of Appeals Order at 9–10. Because the South Caroline Supreme Court declined to grant certiorari, this decision on the issue is final.

Snyder contends that the Stipulation prohibits the application of collateral estoppel in the bankruptcy proceedings. He argues the Stipulation is a "clear and unambiguous agreement" to preserve the monetary claims in the bankruptcy proceedings. Appellants' Br. at 15. The Stipulation reads:

> This stipulation is made without prejudice to, and specifically preserving, [Snyder's] claim in the pending bankruptcy . . . and [Snyder's] appeal of non-monetary claims that are pending before the South Carolina Court of Appeals . . . .

Stipulation at 2. Snyder categorizes this Stipulation as a waiver of the defense of collateral estoppel. Appellants' Br. at 16–17.

The Court disagrees. Federal law governs when an affirmative defense is waived in a federal court proceeding. *See* FED. R. CIV. P. 8(c); *see, e.g.*, *Legal Aid Soc'y v. City of New York*, 114 F. Supp. 2d 204, 222 (S.D.N.Y. 2000) (applying federal procedural law on the forfeiture of an affirmative defense supplied by state law); *Santos v. Dist. Council of N.Y.C. & Vicinity of*

*United Bhd. of Carpenters & Joiners of Am., AFL-CIO*, 619 F.2d 963, 967 (2d Cir. 1980) (directing district courts to follow federal procedural rules when determining whether untimely assertions of state-law-based affirmative defenses were waived).[2] This Circuit has indeed enforced agreements that waive the defense of collateral estoppel, but only where such agreements were explicit. *See Sinicropi v. Milone*, 915 F.2d 66, 68 (2d. Cir. 1990) (finding a waiver of collateral estoppel where appellees expressly stipulated to waive their affirmative defenses); *In re Barney's, Inc.*, 200 B.R. 527, 532 (Bankr. S.D.N.Y. 1996) (declining to apply collateral estoppel where party agreed not to pursue collateral estoppel as a defense). This approach is consistent with this Circuit's general waiver principles: that to prove waiver, a party must establish an "intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it." *J & J Sports Prods., Inc. v. Patin*, 358 F. Supp. 3d 318, 323 (S.D.N.Y. 2019) (citing *Capitol Records, Inc. v. Naxos of Am., Inc.*, 372 F.3d 471, 482 (2d Cir. 2004). "Waiver cannot be created by negligence, oversight, or thoughtlessness; instead, it must be proved that a party intentionally or voluntarily waived a contractual right or advantage." *Id.* (internal citation and quotation marks omitted). If waiver is implied, it must be implied "from conduct of a party which is so inconsistent with his purpose to stand upon his rights as to leave no opportunity for a reasonable inference to the contrary." *In re Gonzalez*, 241 B.R. 67, 75 (S.D.N.Y. 1999) (internal citation and quotation marks omitted).

    The Stipulation constitutes no such express waiver of collateral estoppel. On its face, it is an agreement to dismiss some claims while preserving others. The preservation of a claim is distinct from the waiver of an affirmative defense; the former maintains an offensive right, while the latter relinquishes a defensive right. While the two may overlap, the stringent waiver

---

[2] Both parties also agreed during oral argument that Second Circuit case law should apply to govern the issue of whether collateral estoppel was waived by the Stipulation.

requirements of *J &J Sports* and *In re Gonzalez* indicate that, without explicit language or clear conduct evincing intent—neither of which is present here—the Court cannot infer the relinquishment of a right from the preservation of another. Moreover, because the Stipulation was entered into while the State Action was still on appeal, Ditech could not have known that it had a right to a defense of collateral estoppel because the determination of this issue was not final. Under *J & J Sports*, Ditech cannot waive a right that it does not know exists. 358 F. Supp. 3d at 323. Furthermore, the current party asserting the defense of collateral estoppel is the Consumer Claims Trustee—an entity that is legally separate from Ditech. And there is nothing to suggest that the Consumer Claims Trustee has intentionally and knowingly waived its right to assert this defense either.

      Even if the Court interpreted the Stipulation to be a waiver, it is at most a waiver of the affirmative defense of claim preclusion, or res judicata. Claim preclusion prevents parties from relitigating the same claim or cause of action, even if certain issues were not litigated in the prior action. *Brownback v. King,* 592 U.S. 209, 215 n.3 (2021). The Stipulation is, at most, a preservation of particular claims, such that claim preclusion may be waived. But claim preclusion is a doctrine distinct from issue preclusion, or collateral estoppel. *Id.* While claim preclusion concerns a party's ability to bring a claim, issue preclusion prohibits a party from relitigating an underlying issue of fact or law that has been actually and finally decided. *See id.*; *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 n.5 (2d Cir. 2000). Nowhere does the Stipulation purport to preserve an issue of fact or law for relitigation.

      Snyder also argues that Appellees' assertion of collateral estoppel should be barred because they did not explicitly plead the doctrine in their September 18, 2020, objection. Appellants' Br. at 17; ECF No. 10 ("Reply") at 3–4. In a bankruptcy proceeding, an objection to

9

a claim must state its affirmative defenses to that claim. FED. R. BANKR. P. 7008 (citing Fed. R. Civ. P. 8, which requires a party to state affirmative defenses in a response to a pleading); *see also* FED. R. BANKR. P. 3007(e) (requiring that an omnibus objection state for each claim the grounds of the objection). But Appellees met this requirement. In the September 18, 2020, omnibus objection, Appellees stated with respect to the Snyder claim: "The trial court's findings preclude further relief on the issues presented." ECF No. 8-1 at app. 345. Collateral estoppel is issue preclusion. The Court fails to see how the language "findings preclude further relief on the issues" fails to be an explicit assertion of collateral estoppel.

Snyder further argues that the Restatement (Second) of Judgments, followed by South Carolina, applies to prohibit preclusion when there are "'differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them . . . .'" Appellants' Br. at 17 (quoting Restatement (Second) of Judgments § 28(3)). But federal courts routinely apply preclusion doctrines to judgments in state courts. *See, e.g., In re Shiver*, 396 B.R. 110, 126 (Bankr. S.D.N.Y. 2008) (applying collateral estoppel on a Florida state court judgment in a federal bankruptcy court proceeding); *Wolff v. City of New York Fin. Servs. Agency*, 939 F. Supp. 258, 265–66 (S.D.N.Y. 1996) (applying collateral estoppel on a New York state court judgment in a federal district court proceeding); *Conte v. Just.*, 996 F.2d 1398, 1404 (2d Cir. 1993) (affirming the application of collateral estoppel as to one of the plaintiffs on a New York state judgment in federal court). Snyder fails to cite any authority for the proposition that the Bankruptcy Court, and this Court, should not apply preclusion doctrines to the carefully considered judgments of the South Carolina Court of Common Pleas and Court of Appeals. Nor does Snyder explain what "factors relating to the allocation of jurisdiction" warrant the waiver of collateral estoppel. Appellants' Br. at 17. Instead,

10

Plaintiff relies on an inapposite case where South Carolina applied Section 28(3) to prohibit collateral estoppel in recognition of the qualitative difference between informal administrative hearings and comprehensive criminal trials. Appellants' Br. at 17 (citing *State v. Bacote*, 503 S.E.2d 161, 332–33 (S.C. 1998)). The Court has no reason to apply Section 28(3) to this case.

Finally, Snyder argues that application of collateral estoppel would be "unfair" and "unjust" because Snyder "litigated for years in reliance on the language of the January 2, 2020, stipulation, believing that a decision in one court system would be 'without prejudice' to Snyder's claim in the other court system." Appellants' Br. at 16–17. Because the language of the Stipulation did not expressly waive the defense of collateral estoppel, and because both the Master-in-Equity and Court of Appeals determined that the Administrative Order was not violated, that reliance was unreasonable. That is not what the parties agreed to. And, indeed, permitting the issue to proceed would be unjust. It would allow "repeated litigation of the same issue" when Snyder has already "fully and fairly, but unsuccessfully" litigated through the state court system. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327–28 (1979) (internal citations omitted).

Accordingly, this Court finds that the Bankruptcy Court correctly applied the doctrine of collateral estoppel to the state courts' determination that Ditech and its predecessors satisfied the requirements of the Administrative Order.

## II. The Bankruptcy Court Correctly Determined that Snyder's Claims Meet the 12(b)(6) Standard for Dismissal

Snyder asks the Court to reverse the Bankruptcy Court's Order for failing to apply a Rule 12(b)(6) standard to its claims for civil compensatory contempt, breach of contract, violation of the South Carolina Unfair Trade Practices Act, violation of the Fair Debt Collection Practices Act, and violation of the Real Estate Settlement Procedures Act. Snyder argues that dismissal

under Rule 12(b)(6) is "appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Appellants' Br. at 18 (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999) and *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).

Snyder's characterization of the Rule 12(b)(6) standard is outdated. The *Conley* "no-set-of-facts" standard was heightened in later decisions for litigants proceeding with counsel. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562–63 (2007). In reviewing a motion to dismiss under Rule 12(b)(6), the Court will "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). But a claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

Applying the proper 12(b)(6) standard, the Court examines each cause of action and affirms the Bankruptcy Court's determinations.

### A. Civil Compensatory Contempt

Snyder seeks monetary damages for civil compensatory contempt. To succeed on this claim, Snyder must show a violation of the Administrative Order. Because Snyder is barred by

12

collateral estoppel from arguing that Ditech and its predecessors violated the Administrative Order, the objection to this claim was correctly sustained.

### B. Breach of Contract

Snyder alleges breach of contract for failure to notify Snyder of an assignment of the mortgage and for violation of the implied covenant of good faith and fair dealing. Appellants' Br. at 27.

First, Snyder does not allege how the failure to notify Snyder of an assignment of the mortgage constitutes a breach of contract, particularly a breach by Ditech.

Second, in finding that Ditech and its predecessors had not violated the Administrative Order, the state courts necessarily determined that Ditech and its predecessors had acted in good faith. *See In re Mortg. Foreclosure Actions*, 720 S.E.2d 908, 910 (S.C. 2011) (holding that a court with jurisdiction over a foreclosure action "shall hear and determine any dispute concerning any party's compliance with this order, including without limitation, the failure of any party to act in good faith in complying with the terms of this order . . . ."), *rescinded*, 899 S.E.2d 596 (S.C. 2023); *see also* Summary Judgment Order ¶¶ 9–10; Court of Appeals Order at 9–10. This issue—whether Ditech and its predecessors acted in good faith—is also a necessary element where a party asserts a breach of the implied covenant of good faith and fair dealing. *See, e.g. Crossley v. State Farm Mut. Auto. Ins. Co.*, 415 S.E.2d 393, 397 (S.C. 1992) (holding there was no evidence to support claim defendant breached implied covenant of good faith because there was "no bad faith."). As such, Snyder's breach-of-contract argument is barred by collateral estoppel. Moreover, the implied covenant of good faith and fair dealing "is not an abstract and independent term of a contract" and "serves only to govern the manner in which parties to a contract enforce their existing contractual rights." *Rd., LLC v. Beaufort Cnty.*, 902

13

S.E.2d 366, 372 (S.C. 2024). Snyder does not identify the existing contractual duties upon which Ditech and its predecessors failed to act in good faith. Snyder fails to meet Rule 12(b)(6) pleading standards and the objection to this claim was properly sustained.

### C. Violation of the South Carolina Trade Practices Act ("SCUPTA")

Snyder alleges that Ditech and its predecessors violated SCUPTA because of a failure to comply with the Administrative Order and a failure to comply with the Attorney Preference Statute with respect to Mary Snyder. Appellants' Br. at 28–29. Because a claim of violation of the Administrative Order is barred by collateral estoppel, the Court only addresses the Attorney Preference Statute argument.

The Attorney Preference Statute requires a creditor to "ascertain prior to closing the preference of the borrower as to the legal counsel that is employed to represent the debtor in all matters of the transaction relating to the closing of the transaction . . . ." S.C. CODE ANN. § 37-10-102(a) (2024). Snyder alleges that because Ditech's predecessors failed to ascertain Mary Snyder's attorney preferences, Ditech and its predecessors violated the Statute.

For a violation of the Attorney Preference Statute to be actionable under SCUPTA, "the unfair or deceptive act or practice . . . must have an impact upon the public interest. The act is not available to redress a private wrong where the public interest is unaffected." *Noack Enterprises, Inc. v. Country Corner Interiors of Hilton Head Island, Inc.*, 351 S.E.2d 347, 350 (S.C. Ct. App. 1986). Acts may have an impact on the public interest if they have the potential for repetition. *Singleton v. Stokes Motors, Inc.*, 595 S.E.2d 461, 466 (S.C. 2004). "The potential for repetition may be shown in either of two ways: (1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by

showing the [defendant's] procedures created a potential for repetition of the unfair and deceptive acts." *Id.*

Snyder's claim fails for two reasons. First, Snyder has not plausibly alleged that a violation of the Attorney Preference Statute—with respect to Mary Snyder—has an impact on the public interest. In his reply brief, Snyder argues that this violation has the potential for repetition because Green Tree Financial's similar violations "were so widespread that they have previously been the subject of a class action." Reply at 7–8. But Green Tree Financial is not Ditech, and Snyder has not demonstrated similar past violations. Snyder also has not alleged anything about Ditech's procedures that creates the potential for repetition.

Second, Mary Snyder is not a "borrower" within the meaning of the Attorney Preference Statute. Mary Snyder was not a co-signor on the promissory note secured by the mortgage loan. Failure to provide a non-borrower attorney preference does not violate the Statute.

Snyder urges the Court to include Mary Snyder in the definition of "borrower" pursuant to the "liberal construction and remedial nature" of the South Carolina Consumer Protection Code. Appellants' Br. at 30 (citing S.C. CODE ANN. § 37-1-102). But the definition of "borrower" under the South Carolina Consumer Protection Code is a matter of state law interpretation. "[B]asic principles of federalism" strongly prefer that "the controlling interpretation of [a state] statute be given by state, rather than federal, courts." *Allstate Ins. Co. v. Serio*, 261 F.3d 143, 150 (2d Cir.), *certified question accepted*, 759 N.E.2d 364 (2001), *and certified question answered*, 774 N.E.2d 180 (2002) (internal citations omitted). The Master-in-Equity determined, and the Court of Appeals affirmed, that Mary Snyder does not fall within the Consumer Protection Code's definition of "borrower." *See* Summary Judgment Order, ¶ 12; Court of Appeals Order at

12–13. This Court defers to the state courts' interpretation of the South Carolina Consumer Protection Code and declines to include Mary Snyder in the definition of "borrower."

The Court finds no claim under SCUPTA because Snyder has failed to allege an impact on the public interest and because Ditech and its predecessors did not violate the Attorney Preference Statute. The Bankruptcy Court correctly sustained the objection to this claim.

### D.  Violation of the Fair Debt Collection Practices Act ("FDCPA")

Snyder alleges that Ditech and its predecessors violated the FDCPA by repeatedly contacting the Snyders rather than their attorneys after being notified of representation by counsel. Appellants' Br. at 31. However, this claim is time-barred. Indeed, counsel for Snyder conceded this point at oral argument.

An action to enforce any liability created by the FDCPA must be commenced "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). "[T]he latest date upon which the one-year period begins to run is the date when a plaintiff receives an allegedly unlawful communication." *Somin v. Total Cmty. Mgmt. Corp.*, 494 F. Supp. 2d 153, 158 (E.D.N.Y. 2007). Equitable tolling may apply, but only in "rare and exceptional" circumstances. *Bertin v. United States*, 478 F.3d 489, 494 n.3 (2d Cir. 2007). "To invoke the doctrine of equitable tolling . . . [a] plaintiff must plead, with the particularity required by Federal Rule of Civil Procedure 9(b), the following: (1) wrongful concealment by defendants, (2) which prevented plaintiff's discovery of the claim, and (3) due diligence by plaintiff in pursuing discovery of the claim." *Donoghue v. Am. Skiing Co.,* 155 F. Supp. 2d 70, 74–75 (S.D.N.Y. 2001) (internal citations and quotation marks omitted).

The correspondences that Snyder alleges violated the FDCPA are from 2013. Appellants' Br. at 31 (citing *id.* at A233–234, 236–237). The first time that Snyder asserts a claim under

16

FDCPA is in their present brief, filed in 2024. Snyder claims to have "repeatedly" asserted FDCPA claims as an alternative theory for relief. *Id.* But even assuming these assertions amount to a formal action under the FDCPA, Snyder concedes that "the first mention of the FDCPA in this record is from March 12, 2018." Reply at 8. That is five years after the alleged violations—well beyond the statute of limitations. And Snyder offers no argument on why the doctrine of equitable tolling should be applied for those five years. This cause of action does not meet Rule 12(b)(6) pleading standards.

### E. Real Estate Settlement Procedures Act

Snyder contends that Ditech and its predecessors are liable under RESPA because they delayed the resolution of the state court action by years and because they took years to respond to qualified written requests and requests for information. Appellants' Br. at 31–32. But Snyder failed to raise this argument properly prior to this appeal, which is grounds to disallow this claim.

"The law in this Circuit is clear that where a party has shifted his position on appeal and advances arguments available but not pressed below, and where that party has had ample opportunity to make the point in the [lower] court[s] in a timely manner, waiver will bar raising the issue on appeal." *United States v. Braunig*, 553 F.2d 777, 780 (2d Cir. 1977) (internal citations omitted). To preserve an issue for appeal, a party must, at minimum, "offer some argument or development of its theory" prior to the appeal. *United States v. Griffiths*, 47 F.3d 74, 77 (2d Cir. 1995). "Nevertheless, because this rule is prudential, not jurisdictional, [the Court has] discretion to consider waived arguments . . . where necessary to avoid a manifest injustice or where the argument presents a question of law and there is no need for additional fact-finding." *Allianz Ins. Co. v. Lerner,* 416 F.3d 109, 114 (2d Cir. 2005) (internal quotation marks omitted) (citing *Sniado v. Bank Austria AG*, 378 F.3d 210, 213 (2d Cir. 2004)).

17

Snyder first raised RESPA in the State Action, and once again in the bankruptcy proceedings. *See* ECF No. 7, 2879 at 10; ECF No. 7, 4784-6 at 3. But both times, Snyder argued that Ditech violated RESPA by failing to provide a Servicing Disclosure Statement under 12 U.S.C. § 2605(a). *See id.* The Bankruptcy Court correctly sustained the objection to the RESPA claim because only the originator of the mortgage loan was obligated to provide the Servicing Disclosure Statement, and Ditech was not the originator. Order at 26. Having failed before the Bankruptcy Court, Snyder now raises novel arguments for violation of RESPA nowhere else alleged in the record.

The Court declines to exercise its discretion to consider these waived arguments. Snyder's argument does not present a question of law—rather, whether Ditech and its predecessors "delayed" the action and "took years to respond to qualified requests" are intensive questions of fact. Neither does Snyder suffer manifest injustice from the Court's refusal to entertain these arguments. Snyder has had ample opportunity both before the state courts and before the Bankruptcy Court to present these arguments, and he failed to do so. The Court affirms that the objection to this claim be sustained.

### III. The Bankruptcy Court Did Not Abuse Its Discretion in Denying Leave to Amend

Snyder requests leave to amend his claim to assert administrative expense priority based on the misconduct of the Debtors, Appellants' Br. at 32–34, which the Bankruptcy Court denied. Order at 28–29.

The decision to grant or deny an amendment to a claim rests with the sound discretion of the bankruptcy judge. *In re Integrated Res., Inc.*, 157 B.R. 66, 69–70 (S.D.N.Y. 1993) (collecting cases). "[B]ecause the allowance or denial of an amended proof of claim is discretionary, this

Court will review the bankruptcy court's decision under an abuse of discretion standard." *Id.* (internal citation and quotation marks omitted).

This Court finds that the Bankruptcy Court did not abuse its discretion in denying Snyder leave to amend. The Bankruptcy Court denied Snyder leave to amend because Snyder failed to meet his burden of proving entitlement to priority payment. Order at 28–29. This Court agrees. Administrative priority is given to "the actual, necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b). A claimant who asserts administrative priority bears the burden of establishing that the Claim is entitled to priority status. *See In re Bethlehem Steel Corp*, 479 F.3d 167, 172 (2d Cir. 2007); *In re Drexel Burnham Lambert Grp. Inc.*, 134 B.R. 482, 489 (S.D.N.Y. 1991). Although Snyder offers a citation for the proposition that "damages resulting from the negligence of a receiver during the [post-petition] period give rise to administrative expensive claims," Snyder fails to persuade the Court that this proposition applies to the instant case. Appellants' Br. at 33–34 (citing *Reading Co. v. Brown*, 391 U.S. 471, 485 (1968)). Snyder does not plausibly allege entitlement to damages or any negligence on the Debtors' parts (*see* Discussion Section II).

Snyder also contends that a court must apply a two-prong test to determine if amendment is appropriate, and that the Bankruptcy Court's failure to apply this test is reversible error. Appellants' Br. at 32 (citing *In re Enron Corp.*, 298 B.R. 513, 520–21 (S.D.N.Y. 2003), *aff'd*, 419 F.3d 115 (2d Cir. 2005)). However, the Bankruptcy Court acted within its sound discretion to deny leave to amend without applying the two-prong test. This two-prong test first examines whether there was a "timely assertion of a similar claim or demand evidencing an intention to hold the estate liable." *In re Enron* Corp, 298 B.R. at 520–21 (internal citation omitted). If so, a court is then to balance the equities, considering factors such as undue prejudice. *Id.* at 521.The

19

two-fold test provides grounds to deny amendment when the amendment is merely an attempt to untimely assert a new claim. *See id.* at 520. But courts may also deny leave to amend when amendment would be futile. *See McCarthy v. The Dun & Bradstreet Corp.*, 482 F. 3d 184, 200 (2d Cir. 2007); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *see also In re Waterscape Resort LLC,* 520 B.R. 424, 434 (Bankr. S.D.N.Y. 2014) (noting the comparable rule that a "bankruptcy court has no authority to permit an amendment to assert a discharged claim . . . .").

Here, the amendment was futile, providing a proper ground for denying leave to amend. The Bankruptcy Court appropriately concluded that Snyder could not show entitlement to administrative priority. As such, the Bankruptcy Court did not need to separately apply the two-prong test for untimely assertions of new claims, and committed no reversible error.

### IV.   No Claim Reserve Amount Applies

Snyder's Claim is disallowed in its entirety. There will be no reserve amount.

## CONCLUSION

The Bankruptcy Court's Order is AFFIRMED. The Clerk of Court is directed to close the case.

Dated:  November 7, 2024
        New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge